IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BORRAH E. CAMPBELL II, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:06-CV-205-WHA-CSC |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

RECEIVED
2007 FEB -1  P 3: 06
DEBRA P. HACKETT, CLK
  U.S. DISTRICT COURT
 MIDDLE DISTRICT ALA

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant United Parcel Service, Inc. ("UPS") submits this Memorandum of Law in support of its Motion for Summary Judgment. As explained in more detail below, there are no genuine issues of material fact in this case, and UPS is entitled to judgment as a matter of law on the claims asserted against it. Summary judgment, therefore, should be entered in UPS's favor as to all of Plaintiff's claims.

### I. STATEMENT OF UNDISPUTED FACTS

A.  Plaintiff's Employment with UPS

Plaintiff Borrah E. Campbell II ("Plaintiff"), a black male, began working for UPS in 1986 as a part-time package loader and unloader in UPS's Montgomery, Alabama Hub. (Pl.'s Dep. at 70-72.)[1] In 1988, UPS promoted Plaintiff to a part-time supervisor position over sort operations in the Montgomery Hub. (Id. at 80-81.) In January 1999, UPS promoted Plaintiff to a full-time supervisor position over loading and unloading operations. (Id. at 91; Am. Compl. at 1-

---

[1] UPS is contemporaneously filing with the Clerk the original transcript of Plaintiff's deposition testimony.

2.) Plaintiff voluntarily resigned his employment with UPS in November 2002. (Id. at 51-52; Am. Compl. at 2.)

Throughout his employment with UPS, Plaintiff worked only in UPS's Montgomery Hub. (Pl.'s Dep. at 73-76, 100.) From approximately 1994 through the end of his employment with UPS in 2002, Plaintiff worked the night shift at the Hub, or from approximately ten p.m. to five a.m. (Id. at 82-84, 93-94.)

From approximately 1995 until he was promoted to full-time supervisor in January 1999, Plaintiff reported directly to Stan Woodley, a white full-time supervisor in the Montgomery Hub. (Id. at 101-02, 119.) When Plaintiff was promoted to full-time supervisor, Woodley became his peer and Plaintiff began reporting to Redd Cunningham, a black manager.[2] (Id. at 96-97, 119.) Woodley also reported directly to Cunningham. (Id. at 166-67.) During the last year of his employment with UPS, Plaintiff started reporting to Bert Flood, a black manager. (Id. at 98, 119.) Cunningham and Flood were Plaintiff's only direct supervisors after Plaintiff was promoted to full-time supervisor in January 1999. (Id. at 98-99.)

Cunningham and Flood reported to UPS's Division Manager for the Montgomery region. (Id. at 97-98.) Larry Hill, a white male, was the Division Manager when Plaintiff was promoted to full-time supervisor in January 1999. (Id.) Terrance Thomas, a black male, became Division Manager in early 2002. (Id. at 98-99, 245.)

B.  Plaintiff's Complaints Regarding His Employment with UPS

Plaintiff complains in this suit that UPS discriminated against him in employment on the basis of his race. (Id. at 285-86; Am. Compl. at 1-2.) Specifically, Plaintiff claims that UPS

---

[2] At UPS, "supervisors" and "managers" are different positions; part-time supervisors report to full-time supervisors who, in turn, report to managers. See Pl.'s Dep. at 101-04, 243.

subjected him to a racially hostile work environment and retaliated against him for complaining about the harassment in 1998. (Pl.'s Dep. at 285-86, 289-91; Am. Compl. at 1-2.)[3]

The alleged events that form the bases of Plaintiff's race harassment and retaliation claims are as follows:

- Woodley, Plaintiff's supervisor until January 1999, harassed Plaintiff on the basis of his race prior to 1999 by yelling at him about his job performance and telling Plaintiff on one occasion in 1998 that Plaintiff "should be afraid like a motherfucker." (Am. Compl. at 1; Pl.'s Dep. at 148-49, 152-66, 190-93.) Plaintiff testified that Woodley is the only person who allegedly harassed him on the basis of his race while he was employed at UPS. (Pl.'s Dep. at 286-87.)

- The day in 1998 after Woodley allegedly told Plaintiff that he "should be afraid like a motherfucker," Plaintiff gave Cunningham a handwritten letter complaining about Woodley. (Am. Compl. at 1; Pl.'s Dep. at 151-52, 167, 170-71.) Cunningham forwarded the letter to Hill, who in turn gave it to Woodley to address with Plaintiff. (Pl.'s Dep. at 167-69, 172.) After talking with Woodley, Plaintiff took back the letter on the same day he had given it to Cunningham. (Am. Compl. at 1; Pl.'s Dep. at 188-90.) Plaintiff ultimately lost the letter and has no copy of it. (Pl.'s Dep. at 149-50, 190.) Plaintiff testified that he told no one else about the letter and that "nobody ever addressed that write-up ever again." (Id. at 189-90.) Plaintiff made no other complaints about Woodley during his employment with UPS. (Id. at 190.)

- In retaliation for the letter complaining about Woodley that Plaintiff gave to Cunningham and retrieved on the same day in 1998, the following events occurred (Id. at 291-93):

---

[3] At a status conference with the Court on April 17, 2006, Plaintiff informed the Court that his suit was for racial harassment in employment.

- o In the process of updating an emergency contact roster for his supervisors in 2000 or 2001, Cunningham refused to take Plaintiff's ex-wife's name off the roster and told Plaintiff that he could not divorce his wife because "something in the Bible" said he could not do so. (Am. Compl. at 2; Pl.'s Dep. at 213-20.) Plaintiff was granted a divorce from his wife in October 2001. (Pl.'s Dep. at 25-26, 214.)

- o In 2001, during a conversation regarding five-year performance plans with Cunningham and Bob Bianchi, a white full-time supervisor who was Plaintiff's peer, Cunningham and Bianchi mentioned to Plaintiff that "they" had a "process" of moving supervisors up to manager, but refused to elaborate on who "they" were or what the "process" entailed. (Pl.'s Dep. at 232-42.) Plaintiff believes that this discussion was "a form of mental hazing" done in retaliation for his 1998 letter complaining about Woodley. (Id. at 234, 291-92.) Plaintiff does not allege that Cunningham or Bianchi said anything else that he thought was retaliatory or "mental hazing." (See id. at 238-40.)

C.  Procedural History

Plaintiff filed his complaint in this action in the Circuit Court of Montgomery County, Alabama on January 18, 2006, and filed an Amended Complaint on February 21, 2006.[4] UPS removed the action to this Court on March 2, 2006. Plaintiff has not filed a charge of discrimination, or anything for that matter, with the Equal Employment Opportunity Commission ("EEOC") regarding his claims in this action. (Pl.'s Dep. at 40-43, 310-11.)

---

[4] Plaintiff's Amended Complaint is identical to his original complaint except for the top of the first page of the Amended Complaint, on which Plaintiff added his personal identifying information (including a photocopy of his Alabama Driver License) and other extraneous information.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where the evidence shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of "pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Specifically, the moving party should identify those portions of the pleadings, depositions, affidavits and written discovery responses that demonstrate the absence of a genuine issue of material fact. Id. at 323.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Rule 56 requires the non-movant to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Moreover, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

The Supreme Court has observed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 323 (citation omitted). Consistent with this admonition, the Eleventh Circuit has noted that "[s]ummary judgments for defendants are not rare in employment discrimination cases," Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th

Cir. 1990), and that summary judgment is just as appropriate in employment discrimination cases as it is in other types of cases. Chapman v. A.I. Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

## III. ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's race harassment and retaliation claims are cognizable, if at all, under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") only.[5] UPS is entitled to summary judgment in its favor on such claims for several reasons.

As an initial matter, Plaintiff's claims under either statute are time-barred. Plaintiff failed to exhaust his administrative remedies as required by Title VII, and the four-year statute of limitations applicable to his claims under Section 1981 bars those claims because any alleged harassment occurred more than four years before Plaintiff filed this action.

Even if Plaintiff's claims were not time-barred, the undisputed facts show that Plaintiff cannot establish a *prima facie* case of harassment or retaliation under the controlling law. First, there is no evidence to support Plaintiff's conclusory allegation that Woodley – whom Plaintiff alleges is the only person at UPS that harassed him on the basis of his race – harassed him because of his race. Second, Woodley's alleged harassment of Plaintiff, even if true, was not sufficiently severe or pervasive to create a hostile working environment. Third, even assuming Plaintiff could establish a *prima facie* case of harassment, the undisputed facts establish UPS's affirmative defense to the harassment claim under the Faragher / Ellerth line of cases. Finally, while UPS does not concede that Plaintiff may assert a retaliation claim under Section 1981,

---

[5] Alabama law provides no cause of action for harassment or retaliation in employment. See Thomas v. Utility Trailer Mfg. Co., No. 1:05-cv-914-MEF WO, 2006 WL 2480057, at *3 (M.D. Ala. Aug. 28, 2006); Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002).

even if Section 1981 encompasses such a claim, the undisputed facts show that Plaintiff suffered no adverse employment action, much less any adverse employment action causally connected to his alleged protected activity.

For all of these reasons, UPS respectfully requests that the Court enter summary judgment in its favor on all of Plaintiff's claims. UPS's arguments are more fully addressed below.

A. <u>Plaintiff's Claims Fail as a Matter of Law Under Title VII Because it is Undisputed that Plaintiff Did Not Exhaust His Administrative Remedies</u>

Before asserting a claim under Title VII in court, a plaintiff must first file a timely charge of discrimination with the EEOC and obtain from it a notice of right to sue. 42 U.S.C. § 2000e-5(e)(1); see also <u>Pijnenburg v. W. Ga. Health Sys., Inc.</u>, 255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of such a claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." (citation omitted)). If a party fails to comply with this charge-filing requirement, he cannot assert a Title VII claim in court. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is not filed within [the 180- or 300-day] time limits"); <u>Cooper v. S. Co.</u>, 390 F.3d 695, 732 n. 22 (11th Cir. 2004); <u>E.E.O.C. v. Joe's Stone Crabs, Inc.</u>, 296 F.3d 1265, 1271 (11th Cir. 2002).

Not only did Plaintiff not file a charge of discrimination with the EEOC within 180 days of the alleged events about which he complains in this action, he never filed anything with the EEOC at any time. (Pl.'s Dep. at 40-43, 310-11.) Indeed, Plaintiff admits that he "rescinded" the only written complaint he prepared regarding the alleged harassment in his employment on the

same day that he gave it to Cunningham, a UPS manager. (Id. at 188-90.)[6] After rescinding the complaint and physically taking back the document, Plaintiff never gave it to anyone outside UPS, and he ultimately lost it. (Id. at 190.)

B.  Plaintiff's Claims Fail as a Matter of Law Under Section 1981 Because They Are Barred by the Applicable Statute of Limitations

Under Section 1981, a claim of racial harassment based on a hostile working environment must be brought within four years of the alleged harassment. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004); Cooper, 390 F.3d at 727 n.19. Plaintiff filed this suit on January 18, 2006. Thus, racial harassment occurring before January 18, 2002 is time-barred and may not be redressed via a Section 1981 claim.

Plaintiff testified that the only person that he alleges harassed him on the basis of his race while he worked at UPS is Woodley, his supervisor from approximately 1995 until January 1999. (Pl.'s Dep. at 101-02, 286-87.) Indeed, Plaintiff emphasized that he allegedly suffered harassment on the basis of his race from "solely Stan Woodley . . . [t]hat would be only Stan Woodley" and "[n]obody else." (Id. at 287.) Plaintiff further testified that Woodley's alleged harassment of Plaintiff ended after Plaintiff submitted (and promptly rescinded) his complaint about Woodley in 1998 and discussed it with him, and in any event no later than January 1999 when Plaintiff became Woodley's peer as a result of Plaintiff's promotion to full-time supervisor.[7] (Id. at 107, 190-93.) Plaintiff testified that his 1998 complaint cleared everything up between him and Woodley, that Woodley treated him fairly after the complaint, and that "I had

---

[6] Although Plaintiff may have believed that UPS would submit his 1998 complaint to the EEOC, he has admitted that he prevented any such action by rescinding the complaint on the same day he gave it to Cunningham and regaining sole possession of it. (Pl.'s Dep. at 311 ("I rescinded that document that would have gone to the EEOC eventually."); id at 190 ("[T]hat write-up was no longer in their possession.").)

[7] It is not surprising that the racial harassment Plaintiff alleges in this suit ended when Plaintiff was promoted to full-time supervisor and no longer reported to Woodley because the only persons who directly supervised Plaintiff after Woodley – Cunningham and Flood – are both black, the same race as Plaintiff. (Pl.'s Dep. at 98-99, 119.)

no more problems with him." (Id. at 192-93.) Thus, it is undisputed that the racial harassment of which Plaintiff complains in this suit ended at least seven years before Plaintiff filed this suit and, therefore, that Plaintiff filed his suit three years beyond the expiration of the statute of limitations.[8]

Plaintiff's retaliation claim – assuming such a claim may be brought under Section 1981, see infra Part III.C.3 – is likewise time-barred because Plaintiff did not suffer an adverse employment action within the four-year limitations period. Indeed, there is no evidence that Plaintiff experienced any event rising to the level of an adverse employment action sufficient to support a retaliation claim. See id.

Because the undisputed facts demonstrate that Plaintiff's claims under Section 1981 are time-barred, UPS is entitled to judgment as a matter of law. Plaintiff waited over three years after he voluntarily resigned his employment with UPS and over seven years after the alleged racial harassment by Woodley to file this suit. His lack of diligence in this regard bars his claims and supports the entry of summary judgment in UPS's favor.

C.  Even if Plaintiff's Claims Were Not Time-Barred, the Undisputed Facts Demonstrate that Plaintiff Cannot Establish a *Prima Facie* Case of Harassment or Retaliation

To prove his claim of racial harassment based on a hostile work environment, Plaintiff must prove: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and to create a discriminatorily abusive working environment; and (5) a basis for holding UPS liable. See Miller v. Kenworth of

---

[8] The "mental hazing" and other events that Plaintiff alleges occurred after he became a full-time supervisor were not, by Plaintiff's own admission, harassment based on Plaintiff's race, but were actions allegedly taken in retaliation for the complaint Plaintiff filed about Woodley in 1998. See supra Part I.B; infra Part III.C.3. Thus, these post-1998 events are not part of Plaintiff's hostile work environment claim.

Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). There is no genuine issue of fact as to whether Woodley's alleged harassment of Plaintiff was based on Plaintiff's race or as to whether the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. Additionally, UPS is not liable for the alleged harassment in any event because it satisfies the Faragher / Ellerth affirmative defense, as discussed in Part III.C.2 below.

   1.  **Woodley's Alleged Harassment of Plaintiff was not Based on Race, Nor was it Sufficiently Severe or Pervasive to Alter the Terms and Conditions of Plaintiff's Employment**

As noted in Part III.B, Woodley, who supervised Plaintiff from approximately 1995 until January 1999 while Plaintiff was a part-time supervisor, is the only person that Plaintiff contends harassed him because of his race. (Pl.'s Dep. at 286-87.) Plaintiff points to no specific incidents or events, however, where Woodley acted on the basis of Plaintiff's race, used racially derogatory language, or otherwise treated Plaintiff differently because of his race. Instead, Plaintiff's hostile work environment claim is based on Woodley's alleged general practice of yelling at Plaintiff and the other employees Woodley supervised and Woodley's comment to Plaintiff on one occasion in 1998 that Plaintiff "should be afraid like a motherfucker." (Id. at 148-49, 152-66.) Plaintiff has not created a genuine factual issue as to whether Woodley took these actions against Plaintiff because of Plaintiff's race.

According to Plaintiff, Woodley yelled "[a]t other people" in addition to Plaintiff and "was known for yelling at people."[9] (Id. at 155.) Woodley's yelling, however, was always about his subordinates' work duties and responsibilities. (Id. at 156-57.) Similarly, Woodley's alleged statement to Plaintiff in 1998 that Plaintiff "should be afraid like a motherfucker" referred to the

---

[9] Despite Woodley's alleged practice of yelling at all of his subordinates, Plaintiff did not witness Woodley yelling at any black employees other than Plaintiff and one other employee. (Pl.'s Dep. at 161.)

damage to UPS's business that would occur if a tractor-trailer full of packages was lost on Plaintiff's shift. (Id. at 162-65.) Such a loss would represent a serious accountability failure for which Plaintiff, as yard supervisor, and other supervisors would be responsible. (Id.)

In sum, while Woodley may have had a poor management style to the extent Plaintiff contends he was rude and discourteous and inappropriately yelled at employees in front of other employees – including in front of the employee's own subordinates – Plaintiff points to no specific occasion where Woodley yelled at him or otherwise mistreated him because of his race. (See id. at 154-56, 159.) Plaintiff's allegations of harassment based on his race, therefore, are conclusory and insufficient to create a genuine issue of fact as to this element of Plaintiff's hostile work environment claim. See St. Hilaire v. Pep Boys, 73 F. Supp. 2d 1350, 1364 (S.D. Fla. 1999) ("Title VII does not address generally offensive or unpleasant conduct [and] does not provide a cause of action for employees who are exposed to harassment that has no reference to race . . . ." (citations omitted)); Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1316 n.19 (N.D. Ga. 2001) ("Title VII does not prohibit 'harassment' in and of itself. Rather, demonstrating a 'hostile work environment' based upon a protected class is one way in which a plaintiff can put forth a claim of . . . discrimination.").[10]

Even assuming that Woodley's harassment was based on Plaintiff's race, there is no genuine factual issue as to whether the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment. In evaluating the objective severity of harassment, courts consider the frequency of the conduct, the severity of the conduct, whether the conduct is physically

---

[10] Ironically, Plaintiff's own testimony suggests that race was not a factor at UPS at all. (See Pl.'s Dep. at 186 ("Based on my experience with UPS, the people that deserve it get the job regardless of what race they are.").)

LEGAL02/30232106v1

threatening or humiliating, and whether the conduct unreasonably interferes with the employee's job performance. Miller, 277 F.3d at 1276.

Plaintiff testified that Woodley's alleged harassment ended no later than January 1999 when Plaintiff was promoted to full-time supervisor and became Woodley's peer. (Pl.'s Dep. at 107, 190-93 ("He did change after that. . . . And when he did, I had no more problems with him.").) Plaintiff admits that not only did he perform his job well enough during the period of Woodley's alleged harassment to earn a promotion to full-time supervisor in January 1999, but he continued to work for UPS and successfully perform his supervisory duties – with Woodley as his peer – for an additional four years before voluntarily resigning his employment. (Id. at 51-52, 190-95.) These facts fall far short of demonstrating, as an objective matter, that Woodley's alleged harassment unreasonably interfered with Plaintiff's job performance or that Plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult" as needed to establish his harassment claim. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To the contrary, the undisputed facts show that Woodley's alleged actions, which Plaintiff admits occurred no later than four years before Plaintiff decided to leave UPS, were not severe, were not physically threatening or humiliating, did not interfere with Plaintiff's job performance in any manner, and did not otherwise create a discriminatorily abusive working environment.[11]

Furthermore, Plaintiff's failure to identify any incident of alleged misconduct that was racially motivated, as noted above, precludes a finding that Woodley's alleged harassment was sufficiently severe or pervasive. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir.

---

[11] Moreover, the emotional distress that Plaintiff alleges as his sole injury resulting from the harassment he complains of in this action did not materialize until almost three years after Plaintiff resigned from UPS, and Plaintiff was not treated for any emotional problems during his employment with UPS. (Pl.'s Dep. at 297-98, 301.) See also id. at 299-300 (admitting that he suffered no physical injury as a result of the events alleged in his suit, but instead allegedly suffered only "mental and emotional" harm).

2000) ("Although [the Eleventh Circuit] examine[s] the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute [] harassment, the statements and conduct must be of a [race] related nature . . . before they are considered in determining whether the severe or pervasive requirement is met." (citations omitted)); see also Busby v. City of Orlando, 931 F.2d 764, 785 (11th Cir. 1991) (per curiam) (observing that a work environment is actionably severe or pervasive when it is "polluted with racial discrimination" (citation omitted)). For all these reasons, the Court should enter summary judgment for UPS on Plaintiff's hostile work environment harassment claim.

    2.    **UPS is not Liable for any Alleged Harassment Because it Satisfies the Faragher / Ellerth Affirmative Defense**

It is well-established that in the absence of a tangible employment action, an employer has an affirmative defense to a claim, like Plaintiff's, of harassment based on a hostile work environment. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998). The requisite elements of this affirmative defense are that: (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Ellerth, 524 U.S. at 765. Plaintiff suffered no tangible employment action while employed at UPS. See id. at 761, 765 (describing a tangible employment action as "a significant change in employment status" and listing as examples discharge, demotion, and undesirable reassignment); infra Part III.C.3. Thus, the affirmative defense is available to UPS for the harassment Plaintiff alleges he suffered at the hands of Woodley, his supervisor.

The first prong of the defense is satisfied where an employer has an effective anti-harassment policy that is well disseminated among its employees. Madray v. Publix

Supermarkets, Inc., 208 F.3d 1290, 1297-98 (11th Cir. 2000). The policy's procedure for reporting harassment should provide alternate avenues for lodging a complaint. Id. at 1298.

Here, UPS exercised reasonable care to prevent and promptly correct harassment of the type alleged by Plaintiff as it had in place a comprehensive and well disseminated anti-harassment policy that provided multiple avenues for reporting harassment, both within and outside the supervisory chain of command. (See Pl.'s Dep. Ex. 3.) UPS's professional conduct and anti-harassment policy prohibits all forms of harassment, including racial harassment, and is reflected in large posters located throughout the workplace where employees work and take breaks. (Id. at 124-29 and Exs. 2-3.) The policy and workplace posters inform employees to promptly report harassment or any professional conduct concerns to "one or all of the following: Supervisor and/or other manager, Human Resources manager, Human Resources representative, Employee Relations manager, UPS Help Line 1-800-220-4126." (Id. Exs. 2-3.)

Plaintiff was well aware of this policy as he saw it posted "in every work area . . . [a]nywhere employees meet" and was not only personally familiar with it, but trained other employees on the policy and often addressed it with his subordinates as part of his "pre-work communications meeting." (Id. at 125-26.) Plaintiff was also well aware throughout his employment, including when he was a part-time supervisor reporting to Woodley, of the multiple avenues for reporting harassment, including the toll-free complaint hotline. (Id. at 126-27.) Indeed, Plaintiff was specifically trained on the anti-harassment policy as a supervisor, (id. at 128), and admits that, in addition to seeing the postings regarding the policy throughout his workplace, he signed a written acknowledgment of the professional conduct policy as did other employees. (Id. at 129-31 & Ex. 4.) These undisputed facts demonstrate that UPS exercised reasonable care to prevent harassment of the type Plaintiff complains of in this action by way of

comprehensive policies that were well disseminated to its employees. See Madray, 208 F.3d at 1298-99 (holding that employer exercised reasonable care where it had a well disseminated anti-harassment policy that afforded employees multiple avenues for reporting harassment, including a toll-free complaint line, and there was no evidence that the policy was administered in bad faith).

As for the second prong of the affirmative defense, the undisputed facts further demonstrate that Plaintiff unreasonably failed to take advantage of the policies and procedures available to him at UPS for reporting and correcting harassment. Despite being aware of the multiple methods available to him to report harassment, Plaintiff's sole action in response to Woodley's alleged harassment was to submit and withdraw on the same day a written complaint about a statement Woodley made to Plaintiff in 1998. (Pl.'s Dep. at 123-24, 167-72, 189-90.) Within hours of giving his complaint to Cunningham, Plaintiff took back the sole copy of it and never showed it to anyone else or told anyone else about it. (Id. at 172-73, 189-90.) And despite the presence of three Human Resources employees who worked in the Montgomery Hub, at least one of whom Plaintiff worked "extensively" with as a supervisor, Plaintiff did not complain of harassment to any of these individuals. (Id. at 114-16, 172-73; see id. Exs. 2-3 (listing "Human Resources manager" and "Human Resources representative" as individuals to whom employees may report harassment).) Plaintiff's actions (and inaction) in response to Woodley's alleged harassment can hardly be viewed as reasonable, but instead demonstrate that he failed to give UPS a reasonably opportunity to correct the alleged harassment and, by rescinding his sole complaint the same day he submitted it, did not even expect UPS to take action on the complaint. Thus, there is no genuine factual issue as to whether UPS satisfies its affirmative defense to Plaintiff's harassment claim.

### 3. The Undisputed Facts Establish that Plaintiff Suffered no Retaliation for Allegedly Complaining about Woodley in 1998.

The extent to which retaliation claims may be pursued under Section 1981 and, if so, the precise contours of such claims, are open questions in the Eleventh Circuit. Taylor v. CSX Transp., 418 F. Supp. 2d 1284, 1313 (M.D. Ala. 2006). "Even as to retaliation [occurring] after the 1991 Act [amending Section 1981], not all retaliation claims are necessarily cognizable." Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412 (11th Cir. 1998) (citations omitted).

Assuming Plaintiff's retaliation claim is cognizable under Section 1981 and that the *prima facie* elements of retaliation claims brought under Title VII apply, Plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. Cooper, 390 F.3d at 740. An adverse employment action is either an ultimate employment decision, e.g., employment termination, failure to hire, demotion; or an action that meets "some threshold level of substantiality." Stavropoulos v. Firestone, 361 F.3d 610, 617 (11th Cir. 2004) (citation omitted) (concluding that the acts of which the plaintiff complained "were not objectively serious and tangible enough to be adverse employment actions" (citations omitted)).

Plaintiff cannot establish a *prima facie* case of retaliation in this case because there is no genuine issue of fact regarding whether Plaintiff suffered an adverse employment action and, assuming he did, whether such action was causally linked to his 1998 complaint about Woodley. The undisputed facts demonstrate that the only protected activity that could serve as the basis for Plaintiff's retaliation claim is the written complaint about Woodley that he gave to Cunningham in 1998. (See Pl.'s Dep. at 190.) Plaintiff "rescinded" this complaint, however, on the same day he submitted it. (Id. at 167-71, 188-90.) In any event, Plaintiff admits that UPS took no

employment decision adverse to him after his 1998 complaint: he was not formally disciplined, demoted, denied a pay raise, or denied any benefit of employment that he otherwise enjoyed; and UPS did not terminate his employment – he voluntarily resigned four years after his 1998 complaint. (Id. at 51-52, 309-10.)

Additionally, there is no evidence of employment actions that meet the "threshold level of substantiality" necessary to constitute an actionable adverse employment action in the absence of an ultimate employment decision. The events Plaintiff points to as support for his belief that he was "black balled" for his 1998 complaint about Woodley – Cunningham's refusal to remove his ex-wife's name from the supervisor emergency contact roster in 2000 or 2001 and Cunningham's and Bianchi's vague reference in a 2001 conversation to a "process" by which supervisors become managers – are neither objectively serious nor tangible and, by Plaintiff's own admission, had no effect on Plaintiff's employment status.

Indeed, Plaintiff's testimony establishes that not only was there nothing rising to the level of an adverse employment action after his 1998 complaint, the terms and conditions of his employment actually improved after that time. Plaintiff was promoted to full-time supervisor in January 1999, "shortly after" he complained about Woodley, and Cunningham, whom Plaintiff contends was unhappy about the complaint, was responsible for Plaintiff's promotion. (Pl.'s Dep. at 91, 117-19, 190.) The promotion was a step up for Plaintiff in UPS's organization; his responsibilities and supervisory authority increased, and he received increased compensation and benefits, including stock awards, as a result of the promotion. (Id. at 194-95.) Moreover, after the promotion, Cunningham personally selected Plaintiff to assume Cunningham's supervisory duties when Cunningham was absent from work. (Id. at 95, 116-17 ("I did a job one level above

mine in his absence.").) In short, the undisputed facts fall far short of establishing any adverse employment action sufficient to support a retaliation claim.[12]

Even if Plaintiff had suffered an adverse employment action, there is no evidence of any causal link between his 1998 complaint about Woodley and such action. To the contrary, Plaintiff testified that "[n]obody ever addressed that write-up ever again" after he rescinded it. (Id. at 189-90.) The undisputed facts further demonstrate that any actions by Cunningham in 2000 or later about which Plaintiff complains were not taken because of Plaintiff's 1998 complaint, as explained above. Indeed, Plaintiff admits that the only basis for his belief that Cunningham would want to retaliate against him for his 1998 complaint is his own speculation, (id. at 231), and that Cunningham never told him that he disapproved of the complaint. (Id. at 232.) As for Flood, the only other direct supervisor Plaintiff had after his 1998 complaint, Plaintiff testified that he "never mentioned to [Flood] anything about Stan Woodley," and that he "never mentioned Mr. Woodley to [Flood] or what had happened." (Id. at 270-72.) Thus, Flood's alleged "micro-managing" of Plaintiff about his job duties in 2002 could not have been done in retaliation for Plaintiff's 1998 complaint of which Flood was not even aware. For all of these reasons, the Court should enter summary judgment in UPS's favor on Plaintiff's retaliation claim because the undisputed facts demonstrate that Plaintiff cannot establish a *prima facie* case of retaliation.

---

[12] To the extent Plaintiff alleges in his Amended Complaint that UPS's failure to counsel him and his wife when he became a full-time supervisor is an adverse employment action, the undisputed facts refute such a claim. Plaintiff testified that the only evidence he has of the purported "custom" of counseling supervisors and their spouses is his "indirect interpretation" of language contained in UPS's Policy Book (see Pl.'s Dep. Ex. 6), which contains no reference to employee spouses or such counseling, and a statement allegedly made by another employee that is inadmissible hearsay. (Pl.'s Dep. at 201-12.) Thus, there was no employment action, much less an adverse one, involving counseling. Additionally, Plaintiff's allegation in his Amended Complaint that UPS refused to remove his ex-wife as a beneficiary of his retirement pension cannot serve as an adverse employment action because Plaintiff admits that this alleged action occurred after he resigned his employment with UPS. (Id. at 225-26.)

LEGAL02/30232106v1

## IV. CONCLUSION

For the foregoing reasons, UPS respectfully requests that the Court enter summary judgment in its favor on all of Plaintiff's claims asserted in this action.

Respectfully submitted this 31st day of January 2007.

_____
Lisa H. Cassilly
Georgia Bar No. 116030
Jeremy D. Tucker (TUC037)
Georgia Bar No. 142484
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Office: 404-881-7000
Fax: 404-881-7777


William J. Baxley (BAX001)
Donald R. James, Jr. (JAM016)
BAXLEY, DILLARD, DAUPHIN
McKNIGHT, & BARCLIFT
2008 3rd Avenue South
Birmingham, Alabama 35233
Tel. No.: (205) 939-0995
Fax No.: (205) 271-1108

**Attorneys for Defendant
United Parcel Service, Inc.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BORRAH E. CAMPBELL II, | ) |
| Plaintiff | ) ) ) |
| v. | ) CIVIL ACTION NO. ) 2:06-CV-205-WHA-CSC ) |
| UNITED PARCEL SERVICE, INC., | ) ) |
| Defendant. | ) ) |

## CERTIFICATE OF SERVICE

I certify that I have this date served on Plaintiff in the above-styled action a true and correct copy of **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** via UPS overnight delivery, addressed as follows:

Borrah E. Campbell II
118T Clanton Avenue
Montgomery, AL 36104

Plaintiff *pro se*

This 31st day of January 2007.

Jeremy Tucker (TUC037)