IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BORRAH E. CAMPBELL II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:06cv205-WHA |
| ) | WO |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

The plaintiff, Borrah E. Campbell II ("Campbell"), a former employee of United Parcel Service, Inc., ("UPS"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and 42 U.S.C. § 1981, alleging that he was discriminated against on the basis of his race (African-American).  He alleges that he was subjected to a hostile work environment and also retaliation for complaining to management about his supervisor's behavior.

This court has jurisdiction of Campbell's discrimination claims pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 42 U.S.C. § 2000e-5. Now pending before the court is UPS' motion for summary judgment filed on February 1, 2007. (Doc. No. 35.)  The court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials and concludes that the motion should be granted.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.  *Id.*  To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law.  *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987).  It is substantive law that identifies those facts which are material on motions for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. FACTS

Viewed in the light most favorable to Campbell and drawing all reasonable inferences in his favor, the following facts are treated as undisputed for the purposes of summary judgment. In 1986, Campbell began working as a part-time package loader and unloader in UPS' Montgomery hub. (Pl's Dep., pp. 70-72.) Campbell was promoted to a part-time supervisor position in June of 1998 and to a full-time supervisor position in January of 1999. (*Id.*, pp. 80, 91.)

From 1995 until his 1999 promotion, Campbell was supervised by Stan Woodley ("Woodley"), a Caucasian manager. (*Id.*, pp. 101-02, 119.) Woodley had a reputation for yelling at other employees. (*Id.*, p. 155.) Sometimes Woodley would yell at Campbell about his job performance and "try[] to crack him" while he was performing high pressure tasks. (*Id.*, p. 152.) For example, on one occasion in 1998 while Campbell was busily performing several jobs, Woodley called and asked Campbell if he had "the trailers on the door" and then hung up the telephone. (*Id.*, p. 153.) Later that evening, Woodley told Campbell that he "should be

afraid like a motherfucker because ... it was real serious to ... let a load go." (*Id.*, p. 154.)

The following day, Campbell submitted a handwritten letter complaining of Woodley's behavior to Redd Cunningham ("Cunningham"), an African-American manager. (*Id.*, pp. 119, 151-52, 155.) Cunningham forwarded the letter to Larry Hill ("Hill"), a Caucasian manager. (*Id.*, pp. 119, 168, 170-72. ) A member of upper management gave the write-up to Woodley. Later that day, Woodley met with Campbell and asked him to withdraw the write-up. (*Id.*, p. 189.) After their discussion about the problem, Campbell withdrew the written complaint.[1] (*Id.*, pp. 185, 190.) Shortly afterward, Woodley changed his behavior and Campbell had "no more problems with him." (*Id.*, p. 192.)

A couple of years later, Campbell's "feathers were ruffled" by members of management. (Pl's Amended Comp., p. 2; Pl's Dep., pp. 213-20.) During this time of professional turmoil, Campbell was also experiencing marital difficulties; Campbell and his wife were separated and in the process of getting a divorce. (Pl's Amended Comp., p. 2.) In 2000 or 2001, when Campbell asked Cunningham to remove his wife's name from the emergency contact roster, Cunningham refused to do so. (Pl's Amended Comp., p. 2; Pl's Dep., p. 218.) Cunningham also advised Campbell that the Bible prohibits divorce. (Pl's Dep., p. 220.)

On another occasion in 2001, Cunningham, Campbell, and Bob Bianchi ("Bianchi"), a Caucasian co-worker, engaged in a general discussion about their prospective five-year plans

---

[1] During his deposition, Campbell stated that Woodley was the sole person who discriminated against him on the basis of his race while he was a part-time employee at UPS.

at UPS. (*Id.*, p. 237.) During this discussion, Campbell mentioned that "they had a process of watching supervisors" who planned on being promoted to center or hub manager. (*Id.*, p. 233, 241.) Bianchi and Cunningham, however, were unable to tell Campbell who "they" were or what the "process" was. (*Id.*, p. 238-39.) Campbell became annoyed because Bianchi and Cunningham spoke in "generalities" and he felt that their allusion to a process of watching supervisors was a form of "mental harassment" or "mental hazing." (Id., p. 240, 247.)

In November 2002, Campbell resigned from UPS. (Pl's Dep., p. 266.) Campbell filed this lawsuit in state court on January 18, 2006. (Doc. No. 1-2.) The case was removed to this court on March 2, 2006. (Doc. No. 1-1.)

## IV. DISCUSSION

UPS asserts that Campbell's Title VII claims are untimely because Campbell did not file an EEOC charge within 180 days of the alleged discriminatory and retaliatory events. In addition, UPS argues that Campbell's claims filed pursuant to 42 U.S.C. § 1981 are untimely because they were filed after the applicable four-year statute of limitations.

Campbell does not dispute that he failed to file an EEOC charge against UPS. The undisputed evidence demonstrates that all the statements and actions about which Campbell complains occurred between 1995 and 2001. To maintain a valid Title VII claim, a charge of discrimination must be filed with the EEOC within 180 days after the alleged discriminatory employment practice.[2] *EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107, 100 (1988); *Hipp*

---

[2] In a non-deferral state, a plaintiff has 180 days in which to file a charge of discrimination with the EEOC. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001). Alabama is a non-deferral state. *Id.*

*v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001). The charge must be in writing, made under oath or affirmation, and filed within 180 days of the allegedly unlawful employment action. 42 U.S.C. § 2000e-5(b), 42 U.S.C. § 2000e-5(e)(1). Thus, the protection of Title VII only applies to those claims of employment discrimination arising within 180 days of the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). *See also Morrow v. Auburn Univ. at Montgomery, Al.*, 973 F.Supp. 1392, 1400 (M.D. Ala. 1997) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Any claims occurring prior to this 180-day benchmark are untimely. *See Alexander v. Fulton Cty, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993). Once the defendant raises the issue of timeliness, the plaintiff bears the burden of proving that any untimeliness is excused by an equitable exception, such as waiver, estoppel, or the continuing violation doctrine. *Malone v. K-Mart Corp.*, 51 F.Supp.2d 1287, 1300 (M.D. Ala. 1999) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256 (1980)). Campbell, however, does not dispute that he failed to file an EEOC charge or argue that his untimeliness should be excused. Because Campbell did not file his Title VII claims EEOC within 180 days of the events about which he complains, Campbell's Title VII claims are time-barred.[3]

Campbell likewise does not dispute that his § 1981 claims are untimely. In *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004), the Court determined that Congress'

---

[3] The defendant's motion is also due to be granted because Campbell failed to exhaust his administrative remedies. The timely filing of an EEOC charge is a prerequisite to a civil action based upon Title VII, and a plaintiff who fails to file a timely charge of discrimination is precluded from bringing a civil action because of a failure to exhaust his administrative remedies. *See*, *e.g.*, *Lorance v. AT&T Techs., Inc.*, 490 U.S. 900, 903 n. 2 (1989).

enactment of 28 U.S.C. § 1658, which created a default four-year statute of limitations for federal causes of action created after that date, changed the limitations period for some claims under § 1981 to four years. *Id*. at 378-79. In addition, the Court held that, to the extent that the Civil Rights Act of 1991 created new causes of action not previously cognizable under § 1981, such claims were subject to the "catch-all" statute of limitations of § 1658. *Id.* at 381-82. The Court specifically noted that hostile work environment claims arise under the amendment to § 1981 contained in the 1991 Act, and therefore, are governed by the "catch-all" four-year limitations period. *Id*., at 383-84. *See also White v. Sears, Roebuck and Co.*, No. CIVA 1:03cv00002 GET, 2006 WL 2443848, at *20 (N.D. Ga. August 21, 2006) (slip opinion) (finding that the plaintiff's claims of discrimination and retaliation were barred by the four-year limitations period). As previously discussed, the undisputed evidence demonstrates that all the statements and actions about which Campbell complains occurred between 1995 and 2001. Campbell waited until January 2006 to submit his § 1981 claims in state court. Thus, Campbell's § 1981 claims were filed after the expiration of the four-year limitations period.

Campbell makes no legal argument and provides no analysis in his response to UPS' motion for summary judgment with respect to the timeliness of his Title VII and § 1981 claims.[4] He does not point to or otherwise provide the court with any evidence challenging the

---

[4]Campbell's entire response is one short paragraph:

> As stated in the original complaint. I was blackballed for standing up to a management person who was prejudiced and mistreated me by yelling and telling me I had better be afraid like a motherfucker. In my last days at the defendant employer I scheduled two days off which were scheduled well in advance (sic) were canceled at the last by my then manager Burt Flood. I went ahead and took the days off anyway and when I returned to work Richard Quincey pushed a termination notice in my face. I refused to sign and handed in a

timeliness issue. Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). *Cf. Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795, 799 (11th Cir. 2005) (Because the plaintiff provided no legal argument or analysis in her brief regarding the timeliness of her claims, the court deemed the plaintiff's § 1981 and Title VII claims abandoned on appeal and concluded that the claims were time-barred.). Campbell has failed to demonstrate a genuine issue of material fact regarding the timeliness of his hostile work environment and retaliation claims; therefore, the court concludes that Campbell's Title VII claims are barred by the 180-day rule and that his § 1981 claims are barred by the applicable limitations period.

## VI. CONCLUSION

Accordingly, it is the

RECOMMENDATION of the Magistrate Judge that the defendant's motion for summary judgment should be GRANTED. It is further

ORDERED that on or before March 18, 2007, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

---

resignation notice. I should have received a cash payout of my retirement, but did not. I'm asking for reinstatement to my former position as supervisor if the judge finds that there was no wrongdoing on behalf of the employer. I was a fifteen-year veteran.

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of March, 2007.

        /s/Charles S. Coody
    CHARLES S. COODY
    CHIEF UNITED STATES MAGISTRATE JUDGE